IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RSUI INDEMNITY COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> TOWER RESEARCH CAPITAL, LLC ) <br> ) <br> Defendant. ) <br> _____ ) | Case No.: 1:20-cv-7417 |

## COMPLAINT FOR DECLARATORY JUDGMENT

RSUI Indemnity Company ("RIC"), by and through its attorneys, and for its Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201 and 2202 against Defendant, Tower Research Capital, LLC, states as follows:

1. RSUI Indemnity Company is an insurance company seeking a declaratory judgment that no coverage exists under RIC's Excess Liability Policy No. HS665009 (the "RIC Policy," attached as Exhibit A) for a lawsuit filed in October 2018 against Tower Research Capital LLC ("TRC") and three employees of TRC, captioned *Gregory Boutchard, et. al. v. Kamaldeep Gandhi, et al*., United States District Court for the Northern District of Illinois, Eastern Division, No. 1:18-cv-07041 (the "Underlying Lawsuit," attached as Exhibit B). TRC is the only defendant in the Underlying Lawsuit that seeks coverage from RIC under the Policy.

## Parties

2. Plaintiff RIC is an insurance company that is organized and exists pursuant to the laws of New Hampshire, with its principal place of business in the state of Georgia.

3. Upon information and belief, Defendant TRC is a limited liability company organized and existing by and under the laws of the State of New York, with its principal place of business at 377 Broadway, 11th Floor, New York, NY.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1332(a)(1) and 1332(c)(1), because there is complete diversity between RIC and TRC, and the amount in controversy, exclusive of interest, exceeds $75,000.

5. This Court has personal jurisdiction over TRC because TRC is a New York company, has its principal place of business in New York and regularly conducts business in New York.

6. This Court has the power to issue a declaratory judgment regarding RIC's rights and obligations under the Policy under 28 U.S.C. §§ 2201 and 2202.

7. This Court is a proper venue under 28 U.S.C. § 1391(b)(1), as TRC has its principal place of business in this judicial district.

8. As a result of a dispute with TRC regarding the existence of coverage for the claims made against TRC, there is an actual case or controversy between the parties.

## Background of Underlying Litigation

9. This matter arises from allegations that three traders formerly employed by TRC participated in a scheme to manipulate the prices of E-mini Index Futures contracts traded on the Chicago Mercantile Exchange ("CME"). The former TRC employees allegedly manipulated prices using a technique called "spoofing," in which they placed orders for E-mini Index Futures and then cancelled them prior to execution to send false supply and demand signals to the market. The spoofing scheme allegedly caused E-mini Index Futures prices to move in a

direction that was favorable to the former TRC employees and TRC's trading positions, but was harmful to other investors.

10. TRC initially noticed a claim to RIC which included: a CME investigation; a U.S. Commodity Futures Trading Commission ("CFTC") investigation; a U.S. Department of Justice ("DOJ") investigation; and the Underlying Lawsuit.

11. The DOJ investigation resulted in a criminal charge against TRC which was settled in the form of a deferred prosecution agreement (the "DPA," attached as Exhibit C). The criminal Information (attached to the DPA) charged TRC with one count of commodities fraud, and stated that, from approximately March 2012 until December 2013, TRC "did knowingly and with intent to defraud, execute and attempt to execute a scheme and artifice to defraud a person in connection with a commodity for future delivery…." (Ex. C, criminal Information at ¶ 1).

12. The DPA stated that "an individual within substantial authority personnel of [TRC] participated in, condoned, or was willfully ignorant of the offense." (Ex. C, ¶ 10).

13. TRC agreed to pay the government a total of approximately $67.5 million under the DPA, which includes a criminal penalty of $24.4 million, criminal disgorgement of $10.5 million, and victim compensation of approximately $32.5 million.

14. The complaint in the Underlying Lawsuit alleges that TRC and three of its employees manipulated E-mini Dow Futures contracts, E-mini S&P 500 Futures contracts, and E-mini NASDAQ 100 Futures contracts traded on the CME and the Chicago Board of Trade in violation of the Commodity Exchange Act ("CEA"). (Ex. B, p. 1, ¶ 1). The class is defined in the Underlying Complaint as all persons and entities that purchased or sold any E-mini Dow Futures contracts, E-mini S&P 500 Futures contracts, and E-mini NASDAQ 100 Futures

contracts, or any option on those futures contracts, during the period from at least March 1, 2012 through at least October 31, 2014.  (Ex. B, p. 49, ¶ 121).

16. 15. TRC filed a motion to dismiss the complaint in the Underlying Lawsuit, which was still pending when the Underlying Lawsuit was settled.

16. The plaintiffs in the Underlying Lawsuit alleged that the DPA resolved charges arising from the same unlawful conduct alleged in the Underlying Lawsuit. (*See* Sur-Reply in opposition to Defendants' Motion to Dismiss filed by Plaintiffs in Underlying Lawsuit, Docket Entry # 100, p. 1).

17. On April 14, 2020, TRC advised RIC for the first time that TRC had made a settlement offer to plaintiffs in the Underlying Lawsuit in January 2020, which implicated RIC's entire policy limit.

18. RIC responded with a letter dated April 15, 2020 providing its coverage position, including that TRC was in breach of the consent-to-settle provision applicable to the RIC Policy.

19. On April 23, 2020, TRC informed RIC that it had agreed in principle with underlying plaintiffs' counsel to settle the Underlying Lawsuit for an amount in excess of RIC's limit.

20. At the time of the April 2020 discussions between TRC and RIC, RIC was told that XL had not yet exhausted its $3,000,000 primary limit.  However, RIC understands that XL's limit may have since been exhausted.

21. RIC sent a letter to TRC dated May 14, 2020 where it reiterated its coverage position, requested certain outstanding information, and stated that, while RIC continued to maintain its reservation of rights regarding the consent-to-settle provision, RIC was satisfied that the amount of the settlement in principle was reasonable.

22. TRC sent a letter to RIC dated August 12, 2020 disagreeing with its coverage position and refusing to provide the additional information requested. TRC seeks coverage from RIC for the settlement it entered into that exceeds the $2 million limit of liability of the RIC Policy.

## The RIC Insurance Policy

23. RIC issued the RIC Policy to Tower Research Capital, LLC for the policy period from October 4, 2015 to October 4, 2016, which provides a $2,000,000 aggregate limit of liability excess of a $3,000,000 underlying limit of liability. (Ex. A, Excess Liability Policy Declarations). The RIC Policy is a claims-made policy. (*See id*.).

24. XL Specialty Insurance Company ("XL") issued Financial Services Liability Policy No. ELU141373-15 (the "XL Primary Policy," attached as Exhibit D) to Tower Research Capital, LLC for the policy period October 4, 2015 to October 4, 2016.

25. The Insuring Agreement of the RIC Policy states:

> The Insurer designated on the Declarations Page, in consideration of the payment of the premium and in reliance upon all applications, documents and information provided or made available to it by or on behalf of the Insured, and subject to all of the terms, conditions and other provisions of this policy, including endorsements hereto, agrees with the Insured that the Insurer shall provide the Insured with Insurance during the Policy Period which is in excess of the total limits of liability and any retention or deductible amounts under the Underlying Insurance as set forth in Item 8 of the Declarations Page, and shall pay Loss arising from a Claim for a Wrongful Act first made during the Policy Period.[1]

(Ex. A., Sec. I.)

26. The RIC Policy is subject to the same terms, conditions, other provisions and endorsements (except as specifically provided in the RIC Policy) as are contained in the XL Primary Policy. (Ex. A, Section IV.A.)

---

[1] Capitalized and bolded terms are specifically defined in the RIC Policy.

5

27. Further, the RIC Policy states that RIC shall not pay any amount until all retentions and all Underlying Insurance limits have actually been paid by any combination of the Insured and all Insurers constituting the Underlying Insurance. (Ex. A, Section IV.C.)

28. The XL Policy provides as follows:

> No Insured may incur any Defense Expenses or admit any liability for, make any settlement offer with respect to, or settle any Claim without the Insurer's prior consent, such consent not to be unreasonably withheld. The Insurer will have the right to make investigations and conduct negotiations and, with the consent of the Insured, enter into settlement of any Claim which the Insurer deems appropriate.

(Ex. D, Section II.B.2.)

29. The XL Policy further provides that:

> The Insured agrees to provide the Insurer with all information, assistance and cooperation that the Insurer shall reasonably request, and further agrees that it will do nothing which in any way increases the Insurer's exposure under this Policy or in any way prejudices the Insurer's potential or actual rights of recovery.

(Ex. D., Section II.I.1.)

30. Based on the settlement offer(s) made by TRC to the plaintiffs in the Underlying Lawsuit, without the prior consent of RIC, TRC is in breach of Section II.B.2 of the XL Primary Policy.

31. The consent-to-settle provision is a condition precedent to coverage under the RIC Policy, and TRC's failure to comply with its obligations under the RIC Policy precludes coverage for the Underlying Lawsuit. Therefore, RIC has no duty to provide coverage to TRC with respect to the Underlying Lawsuit.

## **COUNT I**

### **RIC Has No Duty to Provide Coverage Under the Policy**

32. RIC incorporates by reference paragraphs 1-31 as if fully set forth in this count.

33. An actual, justiciable controversy has arisen over whether the RIC Policy requires RIC to tender its limit to TRC with respect to any costs incurred in defending or settling the Underlying Lawsuit.

34. TRC made at least one offer to settle the Underlying Lawsuit without obtaining the prior consent of RIC.

35. Accordingly, TRC is in breach of the consent-to-settle provision and RIC is not obligated to provide coverage to TRC for the Underlying Lawsuit.

**WHEREFORE** RIC seeks a declaration:

A. That TRC breached the consent-to-settle provision in the XL Policy, to which the RIC Policy follows form, and such breach precludes coverage for the Underlying Lawsuit under the RIC Policy.

B. For any other relief that this Court deems just and equitable.

Respectfully submitted,

By: *[signature]*
Courtney E. Scott (CS9744)

TRESSLER LLP
One Penn Plaza
Suite 4701
New York, NY 10119
Telephone: 646.833.0900
Fax: 646.833.0877
E-mail: cscott@tresslerllp.com

*Counsel for Plaintiff, RSUI Indemnity Company*